LUCKENBACH TERMINALS, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON; WILLIAM J. PURDY, COLLECTOR OF TAXES OF THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON; THE HUDSON COUNTY BOARD OF TAXATION; COUNTY OF HUDSON; NEW JERSEY JUNCTION RAILROAD COMPANY, AND THE NEW YORK CENTRAL RAILROAD COMPANY, RESPONDENTS.

Argued May 5, 1937—Decided June 25, 1937.

Before Justices LLOYD, CASE and DONGES.

For the prosecutor, *Kelsey & Ludwig* (*Clarence Kelsey*).

For the township of North Bergen, *Nicholas S. Schloeder.*

For the county of Hudson, *Robert H. Doherty.*

The opinion of the court was delivered by

CASE, J.   Prosecutor seeks a writ of *certiorari* to review
the apportionment of certain taxes and assessments, and also
the proceedings leading up to and including the sale, on
September 12th, 1935, of some of the affected lands for taxes
for the years 1930 to 1934, inclusive.   The underlying ques-
tion is whether the taxes and assessments were apportioned
in a manner unfair to prosecutor.

The lands are in the township of North Bergen, county of
Hudson, a part bordering and the remaining part near to the
Hudson river.   Prosecutor owned certain of the upland and
also a strip of the ripa made valuable by the right, which
attached thereto, to purchase from the State of New Jersey
the contiguous underwater land.   At the water's edge was
the ripa owned by prosecutor.   Bordering thereon was the
highway known as the Hoboken and Hudson River Turnpike.
Next beyond the highway, and parallel therewith, was the
New Jersey Junction Railroad Company, operated by the
New York Central Railroad Company as lessee.   Still beyond
and abutting the railroad lands were the prosecutor's uplands.
Traffic conditions made it desirable to build a new and mod-
ern highway and to eliminate two railroad crossings by revers-
ing the relative locations of the highway and the railroad
and, for further efficiency, to shift the turnpike and the rail-
road some feet easterly, that is, towards the river.   That
shift increased the acreage of the prosecutor's uplands but
encroached upon its ripa.   The ends were amicably attained

by the exchange of deeds and the making of money payments in accordance with an agreement entered into between the parties. The result was that prosecutor obtained additional ripa land (carrying, of course, an added quota of riparian rights) from the state board of commerce and navigation at a cost of $5,000 (which, however, was reimbursed to prosecutor by the county of Hudson), received the further sum of $60,000 in cash and a credit of $4,350.09 on account of arrears in taxes, payment of which was assumed by the county of Hudson; in return for which prosecutor conveyed to the county and the railroad company the rights of way and easements necessary for their purposes, retaining, however, a five-foot fringe of ripa along the river and also specifically reserving all riparian rights incident to any of the lands or rights of way conveyed out; and prosecutor made a payment of $500 to the railroad company. The reason for the purchase from the state board of commerce and navigation was that at that point the high water mark, for reasons that do not appear, had moved appreciably eastward, that is, in the river direction, and the state had, or claimed to have, title to the accretion. The rights of way granted by prosecutor to the railroad company extended from south to north along approximately three-fifths of prosecutor's ripa lands. The conveyance to the county seems to have no substantial bearing upon present issues. In July, 1933, the taxes were apportioned on the basis of the new holdings. Prosecutor's ripa lands had been assessed at $505,000. On July 5th, 1933, the assessed valuation was apportioned $9,000 to that part of the tract to be occupied by the railroad company and $496,000 to the portion retained by the prosecutor. The contention of the prosecutor is that the entire assessment, that is to say, $505,000 should have been apportioned upon the basis of lineal footage, viz., three-fifths to the railroad company and two-fifths to the prosecutor. That argument, in our opinion, is without substance. The great value of the assessed lands lies, not in the right of way conveyed to the railroad company, but in the riparian rights which go with the land binding on the high water line. Not only did the prosecutor

retain title to the ripa in the area calculated by it to be two-fifths of the whole, wherein it conveyed no rights whatever, but it retained unencumbered title to a five-foot strip along the water front of the remainder of the tract, as well as title to the fee in so much of that remainder as constituted a right of way to the railroad company. Not only that, but it obligated the railroad company to permit the latter's name to be used by prosecutor as claimant to the riparian rights if and when that should become necessary in order to obtain for prosecutor the conveyance to it of all the underwater lands.

It appears to us that, upon the showing made, the apportionment was not unfair to prosecutor.

But aside from that we are of the opinion that prosecutor is estopped by its *laches* from obtaining the desired review by writ of *certiorari* other than as hereinafter allowed. The apportionment for the years 1930 to 1933, inclusive, was made in July of 1933. Prosecutor contends that it was not given the preliminary notice of that apportionment required by the statute; but it admits that it received knowledge of the apportionment in April, 1934, at or immediately after the transfers of title, at which time the prosecutor received receipted duplicates of the tax bills (amended in accordance with the apportionment) which the county of Hudson was, by the agreement, obliged to pay. Prosecutor also received at that time amended tax bills, corrected in accordance with the apportionment, for the taxes which were due from it. Neither then nor at any other time did it seek a reapportionment as permitted by the statute: "Such apportionment may be made without notice to the interested parties, but in such case any interested party who did not waive notice may apply for a reapportionment on notice * * *." *Pamph. L.* 1919, *ch.* 121, § 6.

When prosecutor should have acted to correct the alleged error, it did nothing. It remained quiescent while the changes and improvements, including the building of a modern highway past its lands, were concluded and while, and for a long time after, the township concluded its proceedings for the sale for unpaid taxes; indeed until March, 1937, when appli-

cation for a writ of *certiorari* was made. That it may not do. *Conf. Hillside Land Co.* v. *North Bergen,* 112 *N. J. L.* 576; *affirmed,* 114 *Id.* 156. It is in *laches,* gross *laches.*

It is, however, conceded, that there was an overcharge of $1,000 in the interest calculated on the plot 7B tax. Respondents say on their brief that the municipal authorities have offered to correct the error; but the error remains uncorrected. While we may assume that the township stands ready to do as suggested and that the prosecutor may, if it chooses, obtain that correction without further delay or expense, nevertheless prosecutor seems to be entitled to a writ to review the sale based upon the erroneous interest calculation. *Rellstab* v. *Belmar,* 58 *N. J. L.* 489; *Caulfield* v. *Jersey City,* 1 *N. J. Mis. R.* 573. We·are unable to determine, from the proofs before us, the·precise *situs* of plot 7B, or whether the sale of that plot was separate from or embodied in the sale of the remaining parcels. But the writ will go as to that plot alone and to the sale thereof, not to the assessment, the tax or the apportionment. No costs are allowed on this application.